**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| | * | **CIVIL ACTION NO.:** |
| **KELDON NGO** | * | |
| | * | |
| | * | **SECTION " "** |
| **VS.** | * | |
| | * | |
| | * | **JUDGE** |
| **NPAS, INC.** | * | |
| | * | **MAGISTRATE JUDGE** |
| | * | |

***************************************************************************

**COMPLAINT**

NOW INTO COURT, through undersigned counsel, comes Plaintiff, **Keldon Ngo**, a person of full age of majority and domiciled in the Parish of Jefferson, State of Louisiana in the jurisdiction of this Honorable Court, and with respect represents that:

1.

Made Defendant herein is **NPAS, Inc.**, a Tennessee corporation, with its principal place of business in the County of Davidson, State of Tennessee, but authorized to do and doing business within the jurisdiction of this Honorable Court.

2.

This action seeks to recover for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA").

3.

This Court has federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d).

4.

Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred within the jurisdiction of this Honorable Court

5.

Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3).

6.

Defendant NPAS, Inc.is regularly engaged, for profit, in the collection of debts allegedly owed by consumers.

7.

Defendant NPAS, Inc. is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

8.

Defendant NPAS, Inc. alleges Plaintiff owes a debt to Tulane University Hospital and Clinic for medical services rendered to Plaintiff on August 20, 2019 ("the Debt").

9.

The Debt was primarily for personal, family or household purposes and is therefore a "debt" as defined by 15 U.S.C. § 1692a(5).

10.

The Debt was assigned or otherwise transferred to Defendant NPAS, Inc. for collection.

11.

On November 20, 2019, in its efforts to collect the Debt, Defendant NPAS, Inc. sent a Payment Request for Account Number: 105043068 to Plaintiff's mother Lynn Huynh Ngo, incorrectly identified as "Ninh Ngo.[1]

---

1 A copy of the November 20, 2019 Payment Request is attached hereto as Exhibit 1.

12.

On December 10, 2019, Plaintiff, through counsel, sent correspondence via certified mail to NPAS, Inc. disputing the Debt, demanding the Defendant NPAS, Inc. cease all collection efforts, and requesting validation of the Debt.[2]

13.

The December 10, 2019 correspondence included a HIPPA[3] authorization executed by Keldon Ngo's natural tutor (i.e. mother) Lynn Huynh Ngo.[4]

14.

The December 10, 2019 correspondence was received by NPAS, Inc. on December 13, 2019.[5]

15.

Despite receiving the December 10, 2019 correspondence on December 13, 2019,[6] Defendant NPAS, Inc. failed to cease collection efforts.

16.

Despite receiving the December 10, 2019 correspondence on December 13, 2019, Defendant NPAS, Inc. failed to mail verification of the Debt to Plaintiff's counsel.

---

2 A copy of the December 10, 2019 correspondence is attached hereto as Exhibit 2.

3 Health Insurance Portability and Accountability Act of 1996, 42 U.S.C. 201, 45 CFR Parts 160 and 164.

4 See Exhibit 2.

5 See Exhibit 2.

6 See Exhibit 2.

17.

On December 17, 2019, NPAS, Inc. continued its collection efforts by contacting Plaintiff's counsel via telephone.[7]

18.

During the December 17, 2019 telephone communication, Plaintiff's counsel informed Angela (last name unknown) at NPAS, Inc. that Plaintiff disputes the Debt and previously requested verification of the Debt through the December 10, 2019 correspondence.

19.

During the December 17, 2019 telephone communication, Angela (last name unknown) at NPAS, Inc. indicated that the December 10, 2019 certified mail correspondence allegedly was not received by NPAS, Inc.

20.

On December 18, 2019, Plaintiff, through counsel, resent the December 10, 2019 correspondence to NPAS, Inc. via facsimile to 855-856-3216, which was received by Defendant NPAS, Inc. on December 18, 2019 at 8:49 a.m.[8]

---

7 It should be noted that during the December 17, 2019 telephone communications, NPAS, Inc. engaged in Caller ID spoofing under the name of "LOUISVILLE RCPS," in violation of the Truth in Caller ID Act of 2009, 47 USCA § 227(e). NPAS, Inc. also engages in Caller ID spoofing under the name of "PARALLON." Hospital Corporation of America (HCA) owns an entity named "Parallon," which owns Defendant NPAS, Inc. See *Young v. NPAS, Inc.*, 361 F. Supp. 3d 1171, 1176 (D. Utah 2019).

8 A copy of the December 18, 2019 facsimile correspondence is attached hereto as Exhibit 3.

21.

On January 7, 2020, NPAS, Inc. continued its collection efforts by again contacting Plaintiff's counsel via telephone.[9]

22.

During the January 7, 2020 telephone communication, Plaintiff's counsel informed Tasha (last name unknown) at NPAS, Inc. that Plaintiff disputes the Debt and previously requested verification of the Debt through the December 10, 2019 correspondence and the December 18, 2019 facsimile correspondence.[10]

23.

During the January 7, 2020 telephone communication, Tasha (last name unknown) at NPAS, Inc. initially indicated that the December 10, 2019 certified mail correspondence and December 18, 2019 facsimile correspondence was allegedly not received by NPAS, Inc.

24.

Later during the January 7, 2020 telephone communication, Tasha (last name unknown) at NPAS, Inc. located the December 10, 2019 correspondence, but indicated that she would have to look into the HIPPA authorization and call Plaintiff's counsel back because the HIPPA authorization was not signed by Plaintiff's father.

---

9 During the January 7, 2020 telephone communications, NPAS, Inc. again engaged in Caller ID spoofing under the name of "LOUISVILLE RCPS," in violation of the Truth in Caller ID Act of 2009, 47 USCA § 227(e).

10 See Exhibit 2 and Exhibit 3.

25.

Later on January 7, 2020, Tasha (last name unknown) at NPAS, Inc. contacted Plaintiff's counsel a second time and indicated that the HIPPA authorization would need to be signed by "Ninh Huynh" (the incorrect spelling of Plaintiff Keldon Ngo's mother's name).

26.

During the second January 7, 2020 telephone communication, Plaintiff's counsel advised Tasha (last name unknown) at NPAS, Inc. that the HIPPA authorization sent to NPAS, Inc. on December 10, 2019 was signed by the Plaintiff's mother, as indicated in the December 10, 2019 correspondence.

27.

After Plaintiff's counsel advised Tasha (last name unknown) at NPAS, Inc. that the HIPPA release was signed by Plaintiff's mother, Tasha advised that the verification of Debt would be sent to Plaintiff's counsel within 7-10 business days.

28.

On January 16, 2020, despite receiving Plaintiff's counsel's December 10, 2019 correspondence disputing the Debt and demanding that Defendant NPAS, Inc. cease all collection efforts, Defendant NPAS, Inc. mailed another Payment Request (Account Number: 105208676) to Plaintiff's mother Lynn Huynh Ngo, incorrectly identified as "Ninh Huynh."[11]

29.

The January 16, 2020 Payment Request falsely indicates that it is mailed by "Tulane Health Systems."[12]

---

11 A copy of the January 16, 2020 Payment Request is attached hereto as Exhibit 4.

12 See Exhibit 4.

30.

The January 16, 2020 Payment Request is in the same format and form as the November 20, 2019 Payment Request.[13]

31.

The January 16, 2020 Payment Request has the same payment address as the November 20, 2019 Payment Request.[14]

32.

On January 27, 2020, Plaintiff's counsel, communicated again via telephone with Tasha (last name unknown) at NPAS, Inc., who indicated that the validation of Debt could not be sent because NPAS, Inc. was not provided with Lynn Huynh Ngo's (Plaintiff's mother) birth date.

33.

On February 6, 2020, NPAS, Inc. contacted Plaintiff's counsel via telephone using the Caller ID name "PARALLON" and left a voicemail message with Plaintiff's counsel seeking to discuss Plaintiff's Debt.[15]

---

13 See Exhibit 1 and Exhibit 4.

14 See Exhibit 1 and Exhibit 4.

15 It should be noted that during the December 17, 2019 telephone communications, NPAS, Inc. engaged in Caller ID spoofing under the name of "LOUISVILLE RCPS," in violation of the Truth in Caller ID Act of 2009, 47 USCA § 227(e). NPAS, Inc. also engages in Caller ID spoofing under the name of "PARALLON." Hospital Corporation of America (HCA) owns an entity named "Parallon," which owns Defendant NPAS, Inc. See *Young v. NPAS, Inc.*, 361 F. Supp. 3d 1171, 1176 (D. Utah 2019).

34.

Despite repeated written and verbal demands, neither Plaintiff nor Plaintiff's counsel has received any validation of the Debt sought to be collected by NPAS, Inc. in the November 20, 2019 Payment Request, Account No. 105043068.

**COUNT 1: VIOLATION OF 15 U.S.C. 1692g(a) - FAILURE TO PROVIDE INITIAL COMMUNICATION NOTICES**

35.

15 U.S.C. § 1692g(a)(1-5) provides:

> (a) Notice of debt; contents
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing-
>
> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

36.

15 U.S.C. § 1692g(a)(1-5) provides that, within five days after the initial communication, a debt collector shall, unless the information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing certain enumerated information.

37.

Pursuant to 15 U.S.C. § 1692g(a)(1), the written notice must contain the amount of the debt.

38.

Pursuant to 15 U.S.C. § 1692g(a)(2), the written notice must contain the name of the creditor to whom the debt is owed.

39.

Pursuant to 15 U.S.C. § 1692g(a)(3), the written notice must contain a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector.

40.

Pursuant to 15 U.S.C. § 1692g(a)(4), the written notice must contain a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector.

41.

Pursuant to 15 U.S.C. § 1692g(a)(5), the written notice must contain a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

42.

The November 20, 2019 Payment Request was the initial communication Plaintiff received from Defendant NPAS, Inc. regarding the Debt.[16]

43.

The November 20, 2019 Payment Request is a "communication" as defined by 15 U.S.C. § 1692a(2).

44.

The November 20, 2019 Payment Request does not contain the written notices required by 15 U.S.C. § 1692g, including the requirements of 15 U.S.C. § 1692g(a)(2), 15 U.S.C. § 1692g(a)(3), 15 U.S.C. § 1692g(a)(4), and 15 U.S.C. § 1692g(a)(5).[17]

45.

Within five days of the initial communication, (i.e. the November 20, 2019 Payment Request), NPAS, Inc. failed to provide Plaintiff with the written notices required by 15 U.S.C. § 1692g, including the requirements of 15 U.S.C. § 1692g(a)(2), 15 U.S.C. § 1692g(a)(3), 15 U.S.C. § 1692g(a)(4), and 15 U.S.C. § 1692g(a)(5).

16 See Exhibit 1.

17 See Exhibit 1.

46.

Defendant NPAS, Inc. violated 15 U.S.C. § 1692g(a)(2-5) by failing to send the written notice requirements to Plaintiff.

**COUNT 2: VIOLATION OF 15 U.S.C. 1692g(b) -**
**FAILURE TO CEASE COLLECTION OF THE DEBT**

47.

15 U.S.C. § 1692g(b) provides:

> **(b) Disputed debts**
> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

48.

15 U.S.C. § 1692g(b) provides that if the debt collector is notified that the consumer disputed any portion of the debt, the debt collector shall cease collection of any portion of the debt until the debt collector obtains verification of the debt and mails the verification to the consumer.

49.

Plaintiff, though counsel, disputed the Debt, demanded that Defendant NPAS, Inc. cease collection efforts, and requested validation of the Debt on December 10, 2019, which was received by Defendant NPAS, Inc. on December 13, 2019 and again on December 18, 2019.[18]

50.

Pursuant to 15 U.S.C. § 1692g(b), Defendant NPAS, Inc. was required to cease all collection efforts against Plaintiff until verification of the Debt was mailed to Plaintiff's counsel.

51.

Despite receipt of the December 10, 2019 correspondence disputing the Debt and requesting validation of the Debt, Defendant NPAS, Inc. continued its collection efforts by contacting Plaintiff's counsel via telephone on December 17, 2019.

52.

Despite receipt of the December 10, 2019 correspondence disputing the Debt and requesting validation of the Debt, Defendant NPAS, Inc. continued its collection efforts by contacting Plaintiff's counsel via telephone on January 7, 2020.

53.

Despite receipt of the December 10, 2019 correspondence disputing the Debt and requesting validation of the Debt, Defendant NPAS, Inc. continued its collection efforts by mailing the January 16, 2020 Payment Request.[19]

---

18 See Exhibit 2.

19 See Exhibit 2.

54.

Defendant NPAS, Inc. violated 15 U.S.C. § 1692g(b) by failing to cease collection efforts after receiving Plaintiff's counsel's December 10, 2019 correspondence and failing to mail verification of the Debt to Plaintiff's counsel.

**COUNT 3: VIOLATION OF 15 U.S.C. 1692g(b) - OVERSHADOWING CONSUMER'S RIGHTS**

55.

15 U.S.C. § 1692g(b) provides:

> **(b) Disputed debts**
> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

56.

A debt collector has the obligation, not just to convey the required information, but also to convey such clearly.

57.

Even if a debt collector conveys the required information accurately, the debt collector nonetheless violates the FDCPA if that information is overshadowed or contradicted by other language in the communication.

58.

Even if a debt collector conveys the required information accurately, the debt collector nonetheless violates the FDCPA if that information is overshadowed by other collection activities during the 30-day validation period following the communication.

59.

A collection activity or communication overshadows or contradicts the validation notice if it would make the “least sophisticated consumer” uncertain or confused as to his rights.

60.

Demanding immediate payment without explaining that such demand does not override the consumer's right to dispute the debt or demand validation of the debt is a violation of the FDCPA.

61.

Demanding immediate payment without providing transitional language explaining that such demand does not override the consumer's right to dispute the debt or demand validation of the debt is a violation of the FDCPA.

62.

Defendant NPAS, Inc. has demanded Plaintiff make payment of the Debt during the validation period.

63.

The November 20, 2019 Payment Request demands payment of the Debt must be made by December 5, 2019, only 15 days after the Payment Request.

64.

Defendant NPAS, Inc. has demanded Plaintiff make payment of the Debt during the validation period without explaining that such demand does not override the Plaintiff's right to dispute the Debt.

65.

Defendant NPAS, Inc. has demanded Plaintiff make payment of the Debt during the validation period without explaining that such demand does not override the Plaintiff's right to demand validation of the Debt.

66.

Defendant NPAS, Inc.'s demand for payment of the Debt would likely make the least sophisticated consumer uncertain as to his rights.

67.

Defendant NPAS, Inc.'s demand for payment of the Debt would likely make the least sophisticated consumer confused as to his rights.

68.

Defendant NPAS, Inc. violated 15 U.S.C. § 1692g(b) as Defendant NPAS, Inc. overshadowed the information required to be provided by that Section.

**COUNT 4: VIOLATION OF 15 U.S.C. 1692e(11) -**
**FALSE OR MISLEADINGS REPRESENTATIONS -**
**INITIAL WRITTEN COMMUNCATION DISCLOSURE**

69.

15 U.S.C. § 1692e(11) provides:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> . . .
>
> **(11)** The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

70.

The November 20, 2019 Payment Request was the initial communication Plaintiff received from Defendant NPAS, Inc. regarding the Debt.

71.

The November 20, 2019 Payment Request is a "communication" as defined by 15 U.S.C. § 1692a(2).

72.

The November 20, 2019 Payment Request fails to contain the disclosure that that NPAS, Inc. is a debt collector attempting to collect a debt and that any information obtained will be used for that purpose.

73.

Defendant NPAS, Inc. violated 15 U.S.C. § 1692e(11) by failing to send the written notice requirements to Plaintiff.

**COUNT 5: VIOLATION OF 15 U.S.C. 1692e(14) -**
**FALSE OR MISLEADINGS REPRESENTATIONS -**
**USE OF OTHER COMPANY NAME**

74.

15 U.S.C. § 1692e(14) provides:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> . . .
> (14) The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.

75.

Defendant NPAS, Inc. utilizes the name of several other companies while collecting debt.

76.

On December 17, 2019, NPAS, Inc. contacted Plaintiff's counsel via telephone using the Caller ID name "LOUISVILLE RCPS."

77.

On January 7, 2020, NPAS, Inc. again contacted Plaintiff's counsel via telephone using the Caller ID name "LOUISVILLE RCPS."

78.

On January 16, 2020, NPAS, Inc. mailed a Payment Request to Plaintiff using the name "Tulane Health Systems," rather than its own name.

79.

On February 6, 2020, NPAS, Inc. contacted Plaintiff's counsel via telephone using the Caller ID name "PARALLON" and left a voicemail message with Plaintiff's counsel.

80.

NPAS, Inc. repeatedly engaged in false and misleading representations regarding its name while engaged in debt collection.

81.

Defendant NPAS, Inc. violated 15 U.S.C. § 1692e(14) by utilizing names other than the true name of NPAS, Inc.

## **COUNT 6: VIOLATION OF 15 U.S.C. 1692d(6) - FAILURE TO DISCLOSE CALLER'S IDENTITY**

82.

15 U.S.C. § 1692d(6) provides:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> . . .
> (6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

83.

Defendant NPAS, Inc. engages in Caller ID spoofing and utilizes the name of several other companies placing telephone calls while collecting debt.

84.

On December 17, 2019, NPAS, Inc. contacted Plaintiff's counsel via telephone using the Caller ID name "LOUISVILLE RCPS."

85.

On January 7, 2020, NPAS, Inc. again contacted Plaintiff's counsel via telephone using the Caller ID name "LOUISVILLE RCPS."

86.

On February 6, 2020, NPAS, Inc. contacted Plaintiff's counsel via telephone using the Caller ID name "PARALLON" and left a voicemail message with Plaintiff's counsel.

87.

NPAS, Inc. repeatedly engaged in abusive conduct by utilizing other business names than the true name of NPAS, Inc. while collecting debts.

88.

Defendant NPAS, Inc. violated 15 U.S.C. § 1692d(6) by placing telephone calls without meaningful disclosure of the caller's identity by engaging in Caller ID spoofing.

**DAMAGES**

89.

As a result of Defendant NPAS, Inc.'s violations, Plaintiff has suffered actual damages, including but not limited to, monetary damages, physical distress, emotional distress, and other damages which will be shown at trial in this matter.

90.

As a result of Defendant NPAS, Inc.'s violations of the Fair Debt Collection Practices Act, NPAS, Inc. is liable to Plaintiff for:

(1) all actual damages sustained as a result of each violation, pursuant to 15 U.S.C. § 1692k((a)(1);

(2) statutory damages of $1,000.00, pursuant to 15 U.S.C. § 1692k((a)(2);

(3) the costs of this action, together with reasonable attorneys' fees, pursuant to 15 U.S.C. § 1692k((a)(3).

WHEREFORE, Plaintiff Keldon Ngo prays that after due proceedings had, there be judgment in favor of Plaintiff Keldon Ngo and against Defendant NPAS, Inc. for all damages reasonable in the premises, including but not limited to, all actual damages, statutory damages, costs and attorneys' fees.

RESPECTFULLY SUBMITTED:

PIVACH, PIVACH, HUFFT &
THRIFFILEY & DUNBAR, L.L.C.
ATTORNEYS AT LAW

/s/ Corey E. Dunbar
COREY E. DUNBAR (30144)
8311 Highway 23, Suite 104
Post Office Box 7125
Belle Chasse, LA 70037
Telephone: (504) 394-1870
Facsimile: (504) 393-2553
cdunbar@pivachlaw.com