UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KELDON NGO                                          CIVIL ACTION

VERSUS                                                 NO. 20-566

NPAS, INC.                                          SECTION "R" (3)

## ORDER AND REASONS

Defendant, NPAS, Inc., moves for summary judgment on the grounds of standing, and that it is not a "debt collector" under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA").[1] Plaintiff, Keldon Ngo, opposes the motion,[2] and moves for partial summary judgment on the "debt collector" issue.[3] Because there is no genuine dispute that defendant is not a debt collector, the Court grants defendant's motion and denies plaintiff's motion.

## I.    BACKGROUND

This case arises from NPAS's communications with plaintiff and his attorney regarding medical debt. Plaintiff, Keldon Ngo, testified at his

---

[1]    R. Doc. 35.
[2]    R. Doc. 45.
[3]    R. Doc. 39.

deposition that he was involved in a motor vehicle accident in April 2019.[4]
Following the accident, plaintiff received medical treatment at Tulane
Medical Center.[5]   The medical bills at issue in this case show that plaintiff
underwent treatment at Tulane on four occasions: July 22, 2019,[6] August 20,
2019,[7] October 15, 2019,[8] and September 3, 2019.[9]   Plaintiff was a minor
when he received those treatments,[10] and he testified that he was covered by
his mother's, Lynn Huynh's, medical insurance.[11]   At the inception of
plaintiff's treatment, Tulane presented plaintiff and his mother with
"conditions of admission," which plaintiff's mother acknowledged and
accepted.[12]

---

[4]   R. Doc. 45-2 at 3 (Keldon Ngo Deposition at 17:10-23).
[5]   *See* R. Doc. 45-3 (Conditions of Admission).
[6]   R. Doc. 45-5 at 11 (Medical Bills).
[7]   *Id.* at 1.
[8]   *Id.* at 7.
[9]   *Id.* at 3.
[10]   *See* R. Doc. 45-3 at 1 (Conditions of Admission).
[11]   R. Doc. 35-3 at 5 (Keldon Ngo Deposition at 20:2-4).
[12]   R. Doc. 45-3 at 10 (Conditions of Admission).   Plaintiff's mother specifically acknowledged as follows:

> I have been given the opportunity to read and ask questions about the information contained in this form, specifically including but not limited to the financial obligations provisions and assignment of benefit provisions, and I acknowledge that I either have no questions or that my questions have been answered to my satisfaction and that I have signed this document freely and without inducement other than the rendition of services by the Providers.

In an affidavit, Don Wright, Senior Vice President of Operations at NPAS's parent company, Parallon Business Solutions, LLC, described how NPAS acquired and managed the medical debt.[13]  On each occasion that plaintiff received medical treatment, Tulane opened an "account."[14]  For each account, Tulane billed Huynh's insurer, made contractual adjustments, and finally placed any remaining "patient liability" with NPAS.[15]  For two accounts, Tulane billed Huynh directly before it placed the debt with NPAS.[16]

Plaintiff submits evidence that NPAS sent a total of seven bills to his mother,[17] and he contends that those letters violated the FDCPA.[18]  Plaintiff also claims that defendant called his lawyer, Corey E. Dunbar, several times using Caller ID spoofing, *i.e.*, making a false representation by using another company's name.[19]

Ngo brings suit under the FDCPA, alleging six separate grounds: (1) failure to provide initial communication notices required by § 192g(a); (2) failure to cease its collection efforts after plaintiff's counsel requested verification of the debt, in violation of § 1692g(b); (3) overshadowing

---

[13]   R. Doc. 35-4 (Don Wright Affidavit).
[14]   *Id.* at 4, 5, 7, 8, ¶¶ 12, 26, 40, 50.
[15]   *Id.* at 4, 6, 7, 8, ¶¶ 14-15, 27-28, 41-42, 51, 52, 54.
[16]   *Id.* at 6-7, ¶¶ 31, 43.
[17]   R. Doc. 45-5 at 1-14 (Medical Bills)
[18]   R. Doc. 45 at 4-5.
[19]   R. Doc. 1 at 4-5, 8 ¶¶ 17, 21, 33 & n.7.

3

plaintiff's rights by demanding that plaintiff make payment during the validation period, in violation of § 1692g(b); (4) making false or misleading representations in its initial communication by failing to provide notices required by § 1692e(11); (5) making false or misleading representations by using another company's name in a bill and in several calls to plaintiff's counsel, in violation of § 1692e(14); and (6) failing to disclose its identity in its phone calls with plaintiff's counsel, in violation of § 1692d(6).  Defendant now moves for summary judgment, arguing that plaintiff lacks Article III standing, that he lacks statutory standing under the FDCPA, and that defendant is excepted from the FDCPA because it is not a debt collector.[20] Plaintiff moves for partial summary judgment on the issue of whether NPAS is a debt collector.[21]  The Court considers the parties' arguments below.


## II.    LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069,

---

[20]    R. Doc. 35.
[21]    R. Doc. 39.

1075 (5th Cir. 1994) (en banc) (per curiam). "When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075. "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)). The nonmoving party can then defeat the motion

5

by either countering with evidence sufficient to demonstrate the "existence of a genuine dispute of material fact," or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for resolution. *See, e.g.*, *id.*; *Little*, 37 F.3d at 1075 ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322 (emphasis added))).

6

## III.   DISCUSSION

### A.   Standing

A plaintiff must satisfy the standing requirements of Article III of the U.S. Constitution to establish the existence of an "actual case or controversy" subject to federal jurisdiction.  *O'Shea v. Littleton*, 414 U.S. 488, 493-94 (1974).  As the party invoking federal jurisdiction, plaintiff bears the burden of demonstrating each element of standing.  *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (construing Article III standing requirements under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA")).  Standing requires that (1) the plaintiff suffered an injury-in-fact; (2) the injury is "fairly traceable" to the challenged conduct of the defendant; and (3) it must be "likely, as opposed to merely speculative," that the plaintiff's injury will be redressed by a favorable judicial decision.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks and citation omitted).

Defendant argues that Ngo did not suffer an Article III injury because he admitted at his deposition that he had not "been harmed in any way" by the letters that NPAS sent.[22]  To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or

---

[22]    R. Doc. 35-3 at 12 (Keldon Ngo Deposition at 49:6-8).

hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560). "A 'concrete' injury must be 'de facto'; that is, it must actually exist." *Id.* (citation omitted). Thus, while an injury need not be tangible, it cannot be merely abstract or hypothetical. *Id.* at 1548-49. "[T]he violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact." *Id.* at 1549. "But deprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing." *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009); *see also Spokeo*, 136 S. Ct. at 1549 ("[Plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III."); *Sayles v. Advanced Recovery Sys., Inc.*, 865 F.3d 246, 250 (2017) (affirming district court's holding that plaintiff had standing to bring FDCPA claim because defendant's violation of 15 U.S.C. § 1692e(8) "exposed [plaintiff] to a real risk of financial harm caused by an inaccurate credit rating.").

Since *Spokeo*, numerous courts have considered whether a violation of the FDCPA, standing alone, is enough to confer standing on a plaintiff. In general, courts have answered that question in the affirmative. *See Smith v. Moss Law Firm, P.C.*, No. 18-2449, 2020 WL 584617, at *4 (N.D. Tex. Feb. 6, 2020) (collecting cases). The jurisprudence distinguishes between the

provision of the FCRA at issue in *Spokeo*, which contains "procedural requirements," and the FDCPA, which creates "substantive right[s]." *Guerrero v. GC Servs. Ltd. P'ship*, No. 15-7449, 2017 WL 1133358, at *10 (E.D.N.Y. Mar. 23, 2017) ("[T]he majority of post-*Spokeo* decisions which have analyzed standing within the context of the FDCPA have determined that, unlike the FCRA section at issue in *Spokeo*, which contains only procedural requirements, the FDCPA creates a *substantive right*, the violation of which would itself give rise to a concrete injury."). For example, in *Church v. Accretive Health, Inc.*, 654 F. App'x 990, 994 (11th Cir. 2016), the Eleventh Circuit held that Congress created a "new right" and a "new injury" when it enacted the disclosure provisions of the FDCPA. *Id.* (citing 15 U.S.C. §1692e(11); 1692g(a)(1)-(5)); *see also Ghanta v. Immediate Credit Recovery Inc.*, No. 16-573, 2017 WL 1423597, at *4 (N.D. Tex. Apr. 18, 2017) ("In evaluating FDCPA claims post-*Spokeo*, courts have found that an alleged FDCPA violation is sufficient to confer standing because it establishes the consumer suffered the type of harm Congress intended to prevent—abusive debt collection practices.").

Here, plaintiff brings claims under provisions of the FDCPA for which Courts have found an alleged violation gives rise to a concrete injury. The Eleventh Circuit in *Church* held that a plaintiff suffers a concrete injury when

he or she alleges that the defendant did not provide disclosures required by §§ 1692e and 1692g—the basis for Ngo's first five claims.[23]   654 F. App'x at 995-96; *accord Guerrero*, No. 15-7449, 2017 WL 1133358, at *10.   Courts have also held that plaintiffs have Article III standing for violations of § 1692d(6)—the basis for plaintiff's sixth claim—when a defendant allegedly failed to disclose its identity in phone calls. *See, e.g., Pisarz v. GC Servs. Ltd. P'ship*, No. 16-4552, 2017 WL 1102636, at *6 (D.N.J. Mar. 24, 2017); *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 679, 682 (S.D. Fla. 2013).   By alleging violations of the rights created by these provisions, plaintiff has satisfied the standard for concrete injury required by most courts.

A recent decision of the D.C. Circuit held that an allegation that defendant violated § 1692e was insufficient to establish Article III standing. In *Frank v. Autovest, LLC*, 961 F.3d 1185, 1186 (D.C. Cir. 2020), the plaintiff alleged that defendant violated §§ 1692e and 1692d by filing affidavits in a debt collection proceeding that incorrectly identified the employer of the affiants.   But the plaintiff failed to "connect[]" any harms she suffered to the allegedly false statements.   *Id.* at 1188.   She "testified unequivocally that she neither took nor failed to take *any action*" because of the affidavits, and did

---

[23]   R. Doc. 1 at 8-18, ¶¶ 35-81.

not testify that that she was "confused, misled, or harmed" by the defendant's conduct.  *Id.*  The D.C. Circuit concluded that the plaintiff lacked Article III standing because she "was unaffected by the conduct [underlying] her FDCPA claims." *Id.* at 1188.

The circumstances here are unlike those in *Frank*.  Although Ngo said at his deposition that he was not "harmed" by NPAS's conduct,[24] he also testified that he felt "harassed" based on the letters he had received from NPAS and that he had retained legal counsel in his efforts to have NPAS cease its collection efforts against him.[25]  Unlike in *Frank*, the claimed harassment and need to retain legal counsel here are "connected" to NPAS's conduct—its letters, phone calls, and repeated attempts to collect on the medical debt.  *Cf. id.*  For these reasons, the Court finds that plaintiff has shown an actual injury as required by Article III.

The Court thus finds that plaintiff has Article III standing.  As to defendant's attack on plaintiff's statutory standing, the Court notes that statutory standing is not jurisdictional.  *Simmons v. UBS Fin. Servs., Inc.*, 972 F.3d 664, 666 (5th Cir. 2020).  The Court will assume that plaintiff has statutory standing and proceed to the merits of his claim.  *See United States*

---

[24]   R. Doc. 35-3 at 49 (Keldon Ngo Deposition at 49:6-8).
[25]   R. Doc. 45-2 at 5 (Keldon Ngo Deposition at 53:3-9).

*v. Catala*, 870 F.3d 6, 10 (1st Cir. 2017) ("[A]n inquiring court may opt, in the interest of efficiency, to forgo an inquiry into statutory standing and reject a claim on the merits."); *see also Kumar v. Salov N. Am. Corp.*, 737 F. App'x 341, 342 (9th Cir. 2018); *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 103 (2d Cir. 2011); *Eliserio v. United Steelworkers of Am. Local 310*, 398 F.3d 1071, 1078 (8th Cir. 2005).

### B.   Whether NPAS Is a Debt Collector

To succeed on an FDCPA claim, plaintiff must show: (1) he has been the object of collection activity arising from consumer debt, (2) NPAS is a debt collector as defined by the FDCPA, and (3) NPAS engaged in an act or omission prohibited by the FDCPA. *Saragusa v. Countrywide*, No. 14-2717, 2016 WL 1059004, at *5 (E.D. La. Mar. 17, 2016), *aff'd sub nom. Saragusa v. Countrywide Home Loans, Inc.*, 707 F. App'x 797 (5th Cir. 2017).

A "debt collector" is defined by the statute as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  But the statute also provides that a person is not a debt collector when the person's activity "concerns a debt which was not in default at the time it was obtained by such

person." *Id.* at § 1692a(6)(f)(iii).  As the Fifth Circuit has stated, "[t]he legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, *or an assignee of a debt, as long as the debt was not in default at the time it was assigned.*"  *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) (citing S.Rep. No. 95–382) (emphasis added).

The FDCPA does not define "default."  Plaintiff argues that the Court should apply the dictionary definition, *i.e.*, a debt that is unpaid "when due." *Default*, Black's Law Dictionary (11th ed. 2019).   In a widely followed decision, the Second Circuit in *Alibrandi v. Financial Outsourcing Services, Inc.*, 333 F.3d 82, 86 (2d Cir. 2003), expressly rejected adopting the dictionary definition of default as contrary to the purposes of the FDCPA.  *Id.* The Court reasoned that applying the dictionary definition of default would have the "effect of immediately exposing debtors to the sort of adverse measures, such as acceleration, repossession, increased interest rates, and negative reports to credit bureaus, from which the Act intended to afford debtors a measure of protection."  *Id.*

Further, the *Alibrandi* court noted that courts generally distinguish between "debt that is in default," and "debt that is merely outstanding."  *Id.* The Second Circuit recognized that "only after some period of time does an

13

outstanding debt go into default." *Id.* For example, under federal farm loan regulations, a farm loan is considered "in default" 30 days after it is due, and some types of student loan debt goes into default after 270 days. *Id.* (citing 7 C.F.R. § 762.141(a); 34 C.F.R. § 685.102(b)). In contrast, the Second Circuit noted that no authority stood for the proposition "that default occurs *immediately* after a debt becomes due." *Id.*

Instead, to determine whether a particular debt is in default, the Second Circuit held that creditors and debtors "contractually define their own period of default." *Id.* at 86-87 & n.5 ("Once the parties have contractually set the period of delinquency preceding default, it will be a relatively simple matter to determine when the [FDCPA] applies."). Although the Fifth Circuit has not spoken on the matter, the Fourth and Ninth Circuits are in accord with the Second Circuit. *See Fontell v. Hassett*, 574 F. App'x 278, 279 (4th Cir. 2014); *De Dios v. Int'l Realty & Investments*, 641 F.3d 1071, 1074 (9th Cir. 2011). The approach used in the Sixth Circuit asks whether the "loan servicer" has "treated the loan as if it were in default, at the time it acquired the servicing rights to the loan." *Garner v. Select Portfolio Servicing, Inc.*, No. 17-1303, 2017 WL 8294293, at *3 (6th Cir. Oct. 27, 2017); *see Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 362–63 (6th Cir. 2012).

Under either test, the Court finds that there is no dispute of material fact on the question of whether the debt is in default. When plaintiff was admitted for treatment at Tulane, he and his mother were presented with Tulane's "conditions of admission," which his mother acknowledged that she understood and accepted.[26] Among other terms, the conditions of admission include a provision that defines when Tulane's medical debt is considered "in default."[27] It provides as follows:

> [T]he Providers[28] may utilize the services of a third party Business Associate or affiliated entity as an extended business office ("EBO Servicer") for medical account billing and servicing. During the time that the medical account is being serviced by the EBO Servicer, *the account shall not be considered delinquent, past due or in default,* and shall not be reported to a credit bureau or subject to collection legal proceedings. When the EBO Servicer's efforts to obtain payment have been exhausted due to a number of factors (for e.g., Patient or Guarantor's failure to pay or make a payment arrangement after insurance adjustments and payments have been credited, and/or the insurer's denial of claim(s) or benefits is received), the EBO Servicer will send a

---

[26]   R. Doc. 45-3. Plaintiff asserts that the conditions of admission are inapplicable to him because he was a minor at the time he was admitted to Tulane. *See* R. Doc. 39-1 at 4. But this argument is inapposite for two reasons. First, it is irrelevant whether plaintiff agreed to the conditions of admission because they relate to debt held by plaintiff's mother, not plaintiff. Second, even if the Court did not consider the conditions of admission, it would not, as plaintiff suggests, adopt the dictionary definition of default. *See Alibrandi*, 333 F.3d at 86. Instead, the Court would look to other evidence, such as whether NPAS treated the debt at issue as in default. *See Bridge*, 681 F.3d at 362.

[27]   R. Doc. 45-3 at 4-5, ¶ 10.

[28]   "Provider" is defined as "the hospital" or "healthcare professionals on the hospital's staff and/or hospital-based physicians." *Id*. at 1.

> final notice letter which will include the date that the medical
> account may be returned from the EBO Servicer to the Provider.
>
> Upon return to the Provider by the EBO Servicer, the Provider
> may place the account back with the EBO Servicer, or, at the
> option of the Provider, *may determine the account to be
> delinquent, past due and in default*. Once the medical account is
> determined to be delinquent it may be subject to late fees,
> interest as stated, referral to a collection agency for collection as
> a delinquent account, credit bureau reporting and enforcement
> by legal proceedings.[29]

There is no evidence that the account was in default when NPAS obtained it, or at any other time. Tulane's conditions of admission expressly state that a patient's account will not be "considered delinquent, past due[,] or in default" when it is being serviced by a third-party like NPAS.[30] Instead, Tulane has the *option* to determine that the debt is "delinquent, past due[,] and in default" only after the loan servicer has returned the account to Tulane.[31] There is no evidence that NPAS ever returned the account to Tulane, nor any evidence that Tulane determined the debt to be in default. Under the terms of the conditions of admission, the debt at issue was never "in default." *Cf. Fontell*, 574 F. App'x at 279; *De Dios*, 641 F.3d at 1074; *Alibrandi*, 333 F.3d at 86-87 & n.5.

---

[29] *Id.* at 4-5, ¶ 10.

[30] *Id.*

[31] *Id.*

16

There is also no evidence that defendant treated the debt at issue as "in default." *Bridge v. Ocwen Fed. Bank, F.S.B.*, 681 F.3d at 362. The Sixth Circuit in *Bridge* cautioned that a "defendant cannot escape coverage under the Act by asserting to the court that the debt was not actually in default, despite having dunned plaintiffs for months or years in the face of plaintiffs' pleas or proof that the collector has made some error." *Id.* at 363. There is no evidence of such behavior by NPAS in this case. Here, plaintiff submitted as evidence a total of seven letters,[32] regarding four separate "accounts."[33] There are no more than two letters per account, and none of the letters state that the debt at issue is past due. Indeed, all letters set "payment due by" dates in the future of the "statement dates" contained in the bills. Based on this evidence, the Court finds that plaintiff failed to create an issue of

---

[32]   R. Doc. 39-6 at 1-14.

[33]   There is one letter regarding account number 3068 with a statement date of 11/20/2019 and a payment due date by 12/05/2019. *Id.* at 1-2. There are two letters regarding account number 8676. *Id.* at 3-6. The first has a statement date of 12/02/2019, and a payment due date of 12/17/2019. *Id.* at 3-4. The second has a statement date of 1/16/2020 and a payment due date of 1/26/2020. *Id.* at 5-6. There are two letters regarding account number 2238. *Id.* at 7-10. The first has a statement date of 12/09/2019 and a payment due date of 12/24/2019. *Id.* at 9-10. The second has a statement date of 1/23/2020 and a payment due date of 02/02/2020. *Id.* at 7-8. There are two letters regarding account number 8764. *Id.* at 11-14. The first has a statement date of 10/09/2019 and a payment due date of 10/24/19. *Id.* at 11-12. The second has a statement date of 12/07/2019 and a payment due date of 12/19/19. *Id.* at 13-14.

material fact on the question of whether NPAS treated the debt as "in default."

Finally, the Court notes that NPAS has litigated the "not in default" issue several times in federal district courts. The majority of courts have found that NPAS is not a debt collector. *See Wagoner v. NPAS, Inc.*, 456 F. Supp. 3d 1030, 1045 (N.D. Ind. 2020); *Evans v. NPAS, Inc.*, No. 18-02139, 2020 WL 998731, at *5 (D. Md. Mar. 2, 2020); *Raya v. NPAS, Inc.*, No. 19-750, 2020 WL 3550009, at *6 (E.D. Va. Mar. 31, 2020); *Ward v. NPAS, Inc.*, No. 19-00484, 2020 WL 4287178, at *9 (M.D. Tenn. July 27, 2020). Two district courts found that NPAS was a debt collector, but in both cases the courts noted that the debt was determined to be in default *before NPAS obtained it*. *See Young v. NPAS, Inc.*, 361 F. Supp. 3d 1171, 1196 (D. Utah 2019) ("It is undisputed that St. Mark's treated Account 4683 in default when NPAS obtained it."); *Fausz v. NPAS, Inc.*, 237 F. Supp. 3d 559, 569 (W.D. Ky. 2017) (noting that before NPAS obtained the debt, the debt holder hospital sent the plaintiff's account to a collection agency, which sent plaintiff a dunning letter in which it identified itself as a debt collector).

In sum, there is no evidence that plaintiff's debt was ever determined to be in default according to the terms of Tulane's conditions of admission. Nor is there any evidence that NPAS treated the debt at issue as in default.

18

Plaintiff bears the burden of proof on this issue, and the Court finds that plaintiff has failed to create an issue of material fact on the question of whether NPAS is a debt collector.  Consequently, the Court must grant defendant's motion for summary judgment.  For the same reason, the Court denies plaintiff's motion for partial summary judgment.  The Court must dismiss plaintiff's claims.

## IV.   CONCLUSION

The Court GRANTS defendant's motion for summary judgment and DENIES plaintiff's motion for partial summary judgment.   Plaintiff's complaint is DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this  15th   day of January, 2021.

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE